Myrl FOX *v.* STATE of Arkansas

CR 93-306                                                863 S.W.2d 568

Supreme Court of Arkansas
Opinion delivered October 25, 1993

*William R. Simpson, Jr.*, Public Defender, by: *Tammy Harris*. Deputy Public Defender, for appellant.

*Winston Bryant*, Att'y Gen., by: *Cathy Derden*, Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. This appeal arises from a rape conviction where the appellant, Myrl Fox, received a sentence of 60 years imprisonment. The victim was his stepdaughter, A.B., who was 14 years old at time of trial. He challenges his conviction on two grounds: (1) insufficiency of the evidence, and (2) refusal of the trial court to order the release of an unfounded report of sexual abuse made by A.B. Both arguments are without merit, and we affirm.

In 1983, the appellant married Paula Fox, who had a daughter, A.B., by a previous marriage. According to A.B., Fox began sexually abusing her from the time she was six or seven years old and continued to do so until the time that she notified the State Department of Human Services in 1991. After making the charge against Fox, she recanted, and DHS designated the charge to be unfounded.

In August of 1991, A.B. made a second allegation of sexual abuse against Fox to DHS. This allegation was also investigated but this time it was determined to be founded, and an information charging the appellant with rape was subsequently filed. The State contended that the appellant had been sexually molesting A.B. over a period of time beginning January 1, 1983, and ending on July 28, 1991.

The appellant filed a motion for discovery requesting all materials discoverable pursuant to Ark. R. Crim. P. 17.1 through 17.4 and a later motion to compel. In particular, the appellant sought an order requiring the State to provide copies of all prior allegations of sexual abuse that A.B. had made against him as well as all documents concerning investigations by SCAN or any other agency and the results of those investigations.

The court conducted a hearing on the appellant's motion to compel at which the appellant argued that he needed access to the DHS files and especially to any reports stating that a complaint filed by his stepdaughter was determined to be unfounded. He claimed that his stepdaughter had made at least two allegations against him which DHS had determined to be unfounded. The appellant contended that additional unfounded reports would be exculpatory evidence.

Following the hearing, the trial court directed DHS to disclose all reports, both founded and unfounded, concerning allegations of abuse made by A.B. Fox then filed a motion to dismiss the charges against him for prosecutorial misconduct, alleging that the State had failed to comply with the court's order. The State responded that DHS had produced all founded reports and that unfounded reports were not discoverable under Ark. Code Ann. § 12-12-506 (b) (Supp. 1991). The State then filed a motion to reconsider full disclosure of the DHS files.

The court conducted a second hearing on the appellant's motion to dismiss and the State's motion to reconsider and denied the appellant's motion to dismiss for prosecutorial misconduct. The court reversed itself and declined to order disclosure of unfounded reports to the appellant.

Trial in this matter began on August 13, 1992. A.B. testified that the appellant started touching her in the vaginal area when she was six or seven years old, although she could not recall the precise time that Fox first touched her. She said that the appellant began to have sexual intercourse with her and to force her to engage in oral sex when she was ten or eleven years old. She said she did not want to have intercourse or oral sex with him but that she was frightened. She said that she had to have sex with the appellant in order to get permission to leave the house. Though she did not recall the first time that she had sex with the appellant,

she did recall the last time that she did.

A.B. testified that Fox once tried to get her friend, S.E., to touch his penis. She also testified that when she told her mother about this, her mother told her to forget it. She admitted that her mother and the appellant were planning to move away from Little Rock in August of 1991 and that she did not want to go. A.B. further stated that a guest in her uncle's home, Michael Caldwell, once made sexual overtures to her.

On cross examination, A.B. admitted that she lied to Jan Painton, a case worker with the DHS, in July of 1991, when she recanted on the first charge made against Fox. She denied that she made up these allegations so that she would not have to leave Little Rock and testified that she wanted to stay in Little Rock to be with her great-grandfather (her biological father) because he was ill.

S.E. testified that Fox had asked her to touch his penis when she was about ten years old. S.E. also testified that on one occasion the appellant watched pornographic movies in front of her and A.B. and that he "played with himself" while watching these movies. S.E. testified that she had seen the appellant make A.B. "touch him," which was a reference to sexual contact.

Ms. Ida Heer, A.B.'s great aunt, testified that she was present when A.B. told her mother that Fox was having sex with her. She confirmed that Paula Fox told her daughter to forget about it. Ms. Heer also testified that A.B. did not want to leave Little Rock.

Jan Painton, the investigator from DHS, testified that she investigated two claims of abuse made against Fox by A.B. The first claim, made in July of 1991, was determined to be unfounded. The second claim made in August of 1991 was determined to be founded. Ms. Painton described the second report as founded because it concluded that the appellant had indeed been sexually molesting A.B.

A.B.'s mother, Paula Fox, testified on behalf of the appellant and stated that Ms. Painton came out to visit them before the family started talking about moving from Little Rock. She said A.B. never told her that the appellant was having sex with her until she told A.B. that they were moving back to Texarkana.

Mrs. Fox also denied ever hearing that her husband asked S.E. to "touch him." Mrs. Fox did admit that she did not know if the appellant molested A.B. but that she would not put it past him. Mrs. Fox testified that she asked A.B. if anything of a sexual nature was occurring with the appellant and that A.B. denied that there was.

A.B.'s uncle, Raymond Fox, testified that she would confide in him but stated that she never told him Fox was molesting her. He further stated that A.B. once accused a man named Michael Caldwell, who was a friend who was spending the night with him, of attempting to molest her. He added that Caldwell told him that A.B. had been in his room. Michael Caldwell then testified that once when he spent the night at the home of Raymond Fox, A.B. was there and that during the night she came into his room and tried to get in bed with him.

The jury found Fox guilty of rape. Three of the appellant's prior convictions were entered into evidence, and the appellant was sentenced as a habitual offender to sixty years in prison.

## I. SUFFICIENCY OF THE EVIDENCE

The appellant's first allegation of error is that there was insufficient evidence to sustain his conviction. When considering whether the evidence was sufficient, we view the evidence in the light most favorable to the appellee, and the judgment will be affirmed if there is substantial evidence to support the conviction. *Ryan* v. *State*, 30 Ark. App. 196, 786 S.W.2d 835 (1990). Substantial evidence is evidence that is of sufficient force and character that it will compel a conclusion one way or another with reasonable certainty and will induce the mind to go beyond mere suspicion or conjecture. *Townsend* v. *State*, 308 Ark. 266, 824 S.W.2d 821 (1991).

We have consistently held that the testimony of the rape victim, standing alone, is substantial evidence to sustain a rape conviction, and there need not be corroboration. *Stewart* v. *State*, 297 Ark. 429, 762 S.W.2d 794 (1989); *Roper* v. *State*, 296 Ark. 292, 756 S.W.2d 124 (1988); *Houston* v. *State*, 293 Ark. 492, 739 S.W.2d 154 (1987). In this case, A.B. testified that the appellant began sexually abusing her when she was six or seven years old, that he instructed her how to hold and rub his penis, and

that he began having sexual intercourse with her and requiring her to have oral sex with him when she was ten or eleven years old which continued until July 1991. In addition, she testified that she did not want to have sexual relations with the appellant but was frightened and that the appellant would use coercion such as refusing to give her permission to leave the house if she refused.

Additional evidence to support the conviction predominates. Pat Heer testified that she was present when A.B. told her mother that the appellant had been sexually abusing her. Ms. Heer said that Mrs. Fox told A.B. to "forget about it." S.E. also testified that Fox had tried to get her to touch his penis and that she had seen him make A.B. "touch him" which, from the context, meant sexual contact. In addition, Mrs. Fox testified that she did not know whether the appellant was molesting A.B. but that she would not put it past him.

The appellant also questions the credibility of A.B. and argues that her lack of believability militates against affirmance. Credibility determinations are made by the jury, and we will not disturb them on appeal when there is substantial evidence to support the jury's verdict. *Smith* v. *State*, 308 Ark. 390, 824 S.W.2d 838 (1992); *see also Brown* v. *State*, 309 Ark. 503, 832 S.W.2d 477 (1992); *Stewart* v. *State, supra.* A.B.'s testimony was plainly determined to be credible by the jury. The appellant's sufficiency argument is without merit.

## II. RELEASE OF UNFOUNDED REPORT

The appellant's second claim of error is that the trial court erred by not allowing him access to unfounded as well as founded reports of sexual abuse in the DHS files. The appellant argues that the court's ruling that he was entitled only to founded reports was contrary to the holding in *Pennsylvania* v. *Ritchie*, 480 U.S. 39 (1987), as well as a misinterpretation of Ark. Code Ann. § 12-12-506 (b) and (f) (Supp. 1991).

We first consider the statute in question which reads in part:

(a) Reports made pursuant to this subchapter, shall be confidential and may be used or disclosed only as provided in this section. . . .

(b) If the allegations are determined to be unfounded,

the report may be used only within the department for purposes of the administration of adoption, foster care, children's protective services programs, or child care licensing programs. There can be no further disclosure of this information.

. . . .

(f) The department shall not release data that would identify the person who made the report or who cooperated in a subsequent investigation unless a court of competent jurisdiction orders release of the information for good cause shown. However, the information shall be disclosed to the prosecuting attorney or law enforcement officers on request.

Ark. Code Ann. § 12-12-506 (Supp. 1991).

We do not read the statute to require the disclosure of unfounded reports. It is clear to us that the General Assembly intended by § 12-12-506(b) for unfounded reports to be used solely within the confines of DHS and that further disclosure was prohibited. That directive in § 12-12-506(b) could not be more precise or unambiguous, and it is axiomatic that we glean legislative intent from the clear language of the pertinent statute. *Mountain Home Sch. Dist.* v. *T.M.J. Builders, Inc.*, 313 Ark. 661, 858 S.W.2d 74 (1993). Moreover, reading the statute as a whole, we are convinced that the release of information contemplated by § 12-12-506(f) does not relate to unfounded reports.

We further conclude that the appellant's reliance on *Pennsylvania* v. *Ritchie, supra*, is misplaced. Like the instant case, the defendant in *Ritchie* was also facing a sexual abuse charge brought by his daughter, and he had subpoenaed all records from the state agency. The trial court denied the request and the Supreme Court of Pennsylvania reversed, holding that the defendant had the right to examine all reports in dispute. The United States Supreme Court then affirmed the state supreme court in part and reversed it in part. In affirming a remand for further proceedings regarding a full disclosure of files, the Court said:

Although we recognize that the public interest in protecting this type of sensitive information is strong, we

> do not agree that this interest necessarily prevents disclosure in all circumstances. This is not a case where a state statute grants CYS the absolute authority to shield its files from all eyes. (Citing authority.) Rather, the Pennsylvania law provides that the information shall be disclosed in certain circumstances, including when CYS is directed to do so by court order. (Citing authority.) Given that the Pennsylvania Legislature contemplated *some* use of CYS records in judicial proceedings, we cannot conclude that the statute prevents all disclosure in criminal prosecutions. In the absence of any apparent state policy to the contrary, we therefore have no reason to believe that relevant information would not be disclosed when a court of competent jurisdiction determines that the information is "material" to the defense of the accused.

480 U.S. 57-58.

What distinguishes the facts of *Pennsylvania* v. *Ritchie* from the case at hand is that the Arkansas General Assembly has established a clear state policy against the release of unfounded reports, as already discussed, by enacting Ark. Code Ann. § 12-12-506(b). Because this is the case, we do not consider *Pennsylvania* v. *Ritchie* to be controlling. Rather, the Court in that decision took pains to state that it was holding as it did due to the absence of a state policy in Pennsylvania to the contrary. Here, such a state policy exists.

As a corollary point, we note that in the instant case Fox was well aware of the fact that A.B. had made an unfounded report to DHS against him in July 1991, since he received a letter to that effect. He was also aware that the reason the report was deemed unfounded was that A.B. recanted her accusation of sexual abuse. She then renewed the allegation the following month. The jury was also fully apprised of these developments through the testimony of A.B. and Jan Painton.

We read § 12-12-506(f) as a clear expression of state policy prohibiting the disclosure of unfounded reports. Accordingly, we conclude that the trial court did not err in refusing to order DHS to violate this policy.

Affirmed.