COURTNEY HUDSON GOODSON, Associate Justice
Appellant Chris Beason Taffner (Taffner) appeals his conviction on two counts of rape and three counts of sexual assault in the second degree, for which he was sentenced to an aggregate term of 140 years' imprisonment. For reversal, Taffner argues that the circuit court erred when it (1) denied his motion for directed verdict, (2) excluded the testimony of Jonathan Zovak, (3) prevented him from conducting a reasonable cross-examination of one of the victims, and (4) denied his motion for a new trial after a juror had concealed her position as a court-appointed child advocate during voir dire. We affirm in part and remand for further proceedings.
I. Background
Taffner and his wife were adoptive parents to AT, BT, KT, JT, and NT, five children who came into the Taffner home through the foster-care system. Taffner and his wife also periodically fostered other children. The couple fostered MG from October 2014 to December 2014. In December 2014, BT overdosed on Oxycontin, which was provided to her by MG. MG was sent to a drug-treatment facility, and when she returned, the Taffners told her that they could no longer foster her. MG later alleged that Taffner had touched her breasts on two occasions. Consequently, the State charged Taffner with second-degree sexual assault based on MG's allegations. MG was at least fourteen at the time of the alleged offense. During an investigation of MG's allegations, BT alleged that Taffner had inappropriately touched her, and also that he had forcibly penetrated her and forced her to perform oral sex on him. Taffner was charged with two counts of rape and one count of second-degree sexual assault for the incidents involving BT, who was thirteen at the time of the alleged offense. KT initially denied any inappropriate touching or sexual contact but later alleged that Taffner often touched her breasts. Taffner was charged with one count of second-degree sexual assault for doing so when KT was under the age of fourteen.
*433 On January 8, 2016, Taffner filed a motion in limine in which he sought to use specific instances of dishonesty to impeach the juveniles' testimony pursuant to Arkansas Rule of Evidence 608(b) and to offer evidence as to their reputation for honesty. The court held a hearing on the motion on January 12, 2016. At the hearing, Taffner argued that he should be allowed to question BT about false charges she had made against her biological father that had been investigated but found to be unsubstantiated. The hearing also involved other issues and ended without a ruling regarding BT's questioning.
On March 11, 2016, Taffner filed a motion to compel production of a Department of Human Services (DHS) file, which Taffner argued contained a report of a sexual-abuse allegation BT made against her biological father that was found to be unsubstantiated. That same day, the court ordered production of the file for an in camera review of its impeachment or exculpatory value. The file was brought to the court, and another hearing was held later that day. At that hearing, the court considered whether the DHS file should be produced to Taffner. The court noted that BT's biological father's rights had been terminated, and in the termination order, Judge Stacey Zimmerman stated that BT had disclosed sexual abuse by her father. The court found there was no evidence that BT had recanted her allegations by the time the termination order was entered, and the court further found "there is no need for me to examine the juvenile file." The court asked the State to prepare a written order reflecting the ruling.[1] The hearing then ended.[2]
Taffner's trial began on March 14, 2016, and ended on March 16, 2016. On the second day of the trial, the prosecution called BT as a witness. Before BT testified, the court excused the jurors, and the parties revisited the issue of which questions Taffner would be allowed to ask her. During the hearing, the court noted that Ark. R. Evid. 411, known as the rape-shield rule, prevented Taffner from questioning BT about her prior allegation of sexual abuse if BT continued to assert that the allegation was true. However, the court did allow BT to be questioned as to the truthfulness of her prior allegation against her biological father. BT was therefore questioned outside the presence of the jury, and she testified that her allegations of sexual abuse by her biological father were false. After BT's testimony, the circuit court ruled that when the jury returned Taffner could ask BT if she made an allegation against her biological father, if it was true, how long ago the allegation was made, and how old she was at the time. The court further said, "And that's it. Nothing like records that we've talked about in the past and then that's going to be the end of that subject matter." The trial resumed, and BT was questioned accordingly about her prior allegation against her biological father. When the defense asked BT if the prior allegation was true she said, "Now that I know the terms that they use, it is not true."
At the close of the State's case, Taffner moved for a directed verdict with respect to the charge relating to MG. Taffner argued *434 that MG was not a credible witness, but the court denied his motion. The trial proceeded to Taffner's presentation of his defense.
In his defense, Taffner sought to introduce the testimony of Jonathan Zovak, who would have stated that MG had a reputation for dishonesty. Taffner planned to introduce Zovak's testimony through Ark. R. Evid. 608(a), which allows the attack of a witness's reputation for truthfulness. The State argued that Zovak's testimony was barred by Ark. R. Evid. 411, the rape-shield rule, because Zovak was a convicted sex offender, and MG was his victim. The State reasoned that Zovak would need to be impeached by his conviction, which would then violate Rule 411's prohibition of the use of a victim's prior sexual conduct to attack a witness's credibility. According to the State, Taffner was attempting an "end-around" the rape-shield rule. Taffner argued that he was attempting to introduce the evidence through Rule 608(a) and did not plan to reference MG's sexual history; however, the court ruled Zovak's testimony inadmissible under Rule 411.
At the close of his case-in-chief, Taffner again moved for a directed verdict. Taffner raised a new argument that the State had failed to prove that his alleged touching of MG involved forcible compulsion. Taffner argued that without evidence of forcible compulsion, he could not be convicted of second-degree sexual assault for touching MG because she was over the age of fourteen at the time of the alleged offense. The circuit court denied Taffner's motion, and he was convicted of all counts.
II. Points on Appeal
A. Sufficiency of the Evidence
An appeal from the denial of a motion for directed verdict is treated as a challenge to the sufficiency of the evidence. Brunson v. State , 368 Ark. 313, 245 S.W.3d 132 (2006). Therefore, due to double-jeopardy concerns, we first address Taffner's argument that the circuit court erred by denying his motion for a directed verdict. Hicks v. State , 2017 Ark. 262, 526 S.W.3d 831.
Taffner argues that because MG was at least fourteen at the time of the alleged offense, the state failed to offer substantial evidence of forcible compulsion as required by Ark. Code Ann. § 5-14-125(a)(1) (Repl. 2013). That statute prohibits a person from engaging in sexual contact with another person by forcible compulsion. Sexual contact includes an act of sexual gratification involving the touching of the breast of a female. Ark. Code. Ann. § 5-14-101(10). Forcible compulsion is defined by Ark. Code. Ann. § 5-14-101(2) to include "physical force or a threat, express or implied, of death or physical injury to or kidnapping of any person." Arkansas Rule of Criminal Procedure 33.1 requires a challenge to the sufficiency of the evidence to be made by a motion for a directed verdict at the close of the State's case-in-chief and at the close of the defense's case-in-chief. Rule 33.1 requires the motion to "state the specific grounds therefor." Taffner moved for a directed verdict at both stages. However, Taffner did not argue a lack of evidence of forcible compulsion at the close of the State's case. The only argument he made with respect to MG was that she was not a credible witness. In fact, when he renewed his motion for a directed verdict at the close of the defense case, Taffner's attorney specifically said that he had a new argument. Taffner's attorney then went on to argue that there was no proof of a threat of serious bodily injury, death, or kidnapping of MG. The circuit court also recognized Taffner's "new argument" in denying the second motion. We agree that Taffner presented a new argument that the State failed to provide substantial *435 evidence of forcible compulsion and therefore hold that it was not preserved for review.
B. Zovak's Testimony
Taffner next argues that the circuit court abused its discretion by excluding the testimony of Jonathan Zovak. According to Taffner, Zovak would have testified as to MG's reputation for dishonesty pursuant to Ark. R. Evid. 608(a), and Taffner argues that the testimony was not excludable under Ark. R. Evid. 411. Zovak had been convicted of fourth-degree sexual assault of MG. The State argued that Zovak should not be allowed to testify because in order to impeach Zovak, the State would be required to violate Ark. R. Evid. 411 by introducing evidence of Zovak's criminal history, which would in turn reveal MG's sexual history. The circuit court agreed with the State in excluding the testimony.
A circuit court's evidentiary ruling will not be reversed in the absence of an abuse of discretion and a showing of prejudice. McKeever v. State , 367 Ark. 374, 240 S.W.3d 583 (2006). Taffner argues that the testimony was allowed under Rule 608 and was not prohibited under Rule 411. Taffner further argues the court's erroneous ruling prejudiced him because the State's entire case turned on the credibility of the witnesses. The circuit court ruled that Rule 411 specifically excludes reputation evidence, that Zovak would testify as to MG's reputation, and that as a result, he could not testify. Under Rule 608(a), a witness's reputation for truthfulness may be attacked in the form of opinion or reputation evidence. However, Rule 411(b) provides:
[O]pinion evidence, reputation evidence, or evidence of specific instances of the victim's prior sexual conduct with the defendant or any other person, evidence of a victim's prior allegations of sexual conduct with the defendant or any other person, which allegations the victim asserts to be true, or evidence offered by the defendant concerning prior allegations of sexual conduct by the victim with the defendant or any other person if the victim denies making the allegations is not admissible by the defendant , either through direct examination of any defense witness or through cross-examination of the victim or other prosecution witness, to attack the credibility of the victim, to prove consent or any other defense, or for any other purpose.
(Emphasis added.)
Here, Zovak's testimony could best be impeached by referring to his conviction. Taffner argues that Zovak's testimony was not excludable under Rule 411 because the rule prevents the defendant, not the State, from introducing evidence of a victim's prior sexual conduct. Taffner further argues that he was planning to attack MG's reputation for honesty, not her sexual history.
We hold that the circuit court erred by excluding Zovak's testimony under Rule 411 for the following reasons. First, the plain language of Rule 411 prohibits the defendant, not the State, from introducing evidence of a witness's sexual history. We construe court rules using the same means and canons of construction used to interpret statutes. City of Fort Smith v. Carter , 364 Ark. 100, 216 S.W.3d 594 (2005). The first rule in considering the meaning and effect of the statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. Id. When the language of a statute is plain and unambiguous, there is no need to resort to rules of statutory construction. In other words, if the language of the statute is plain and unambiguous, the analysis need go no further. Id. The unambiguous language of Rule 411 demonstrates that it applies to the defendant, not the State.
*436 Therefore, the State could have impeached Zovak with his conviction involving MG without violating Rule 411. Second, although the State could have impeached Zovak with the conviction involving MG, it was not required to do so. Finally, the State could have impeached Zovak with evidence of his past sexual assault conviction without reference to the fact that MG was the victim. Therefore, Zovak's testimony should have been allowed.
Although the circuit court erred by excluding Zovak's testimony, our analysis does not end there because we must still determine if the error resulted in prejudice. See Edison v. State , 2015 Ark. 376, 472 S.W.3d 474 (holding prejudice is not presumed by an evidentiary ruling but must be demonstrated). We conclude that it did not. Zovak would have testified that MG had a reputation for dishonesty. Although Zovak's testimony was excluded, Taffner was allowed to present essentially the same testimony from Donald "Catfish" Holt, a neighbor who testified that MG was a "schemer" who tried to blame others and get her way, while acting as if she was an innocent child. Zovak's testimony would have been cumulative to Holt's. See Lacy v. State , 2010 Ark. 388, 377 S.W.3d 227 (holding that the exclusion of cumulative evidence was not an abuse of discretion). We therefore hold that there was no prejudice in its exclusion.
C. Cross-Examination of BT
Next, Taffner argues that he was prevented from conducting a reasonable cross-examination of BT for two reasons. First, Taffner argues that the DHS file he requested was suppressed in violation of Brady v. Maryland , 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Second, Taffner argues that, in violation of the Sixth Amendment's Confrontation Clause, he was prohibited from inquiring into the reasons BT made a false allegation of sexual abuse against her biological father. Because Taffner's cross-examination arguments raise constitutional questions, our standard of review is de novo. Davis v. State , 2011 Ark. 373, 2011 WL 4396967.
1. The DHS file
Taffner's request for the DHS file was denied by the circuit court. Although the court conducted an in camera hearing before the trial to determine whether the information contained therein should be disclosed to Taffner, the court concluded that it would not be disclosed. At that point in the proceedings, the court believed that BT had not recanted her allegation that her biological father had sexually abused her. The court ruled that Taffner's questioning would be limited to whether BT had made an allegation of sexual abuse against her biological father, if the allegation was true, and how long ago it happened. The court specifically ruled that no documentation would be allowed.
a. File access
In Pennsylvania v. Ritchie , 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987), the defendant was charged with sexual offenses against his minor daughter. The matter was referred to the state's Children and Youth Services (CYS) agency for investigation, and the defendant sought in discovery the records related to the charges at issue in the case, as well as records from a separate report that the defendant's children were being abused. The State refused to turn over the records, despite the existence of a state statute that allowed such records to be disclosed to a court. Although the lower court refused to order production of the records, the Pennsylvania Supreme Court concluded that the trial court's refusal to order production of the records violated the United States Constitution's Confrontation Clause and the Compulsory Process Clause. Pennsylvania appealed. The United States Supreme *437 Court determined that the circuit court should have at least reviewed the file to determine the materiality of its content. The Supreme Court did not agree with Ritchie's argument that he was entitled to access to the entire file. The Court concluded that Ritchie's rights could be protected by remanding to allow the trial court to review the file to determine whether it contained information that probably would have changed the outcome of the trial. Specifically, the court held:
We therefore affirm the decision of the Pennsylvania Supreme Court to the extent it orders a remand for further proceedings. Ritchie is entitled to have the CYS file reviewed by the trial court to determine whether it contains information that probably would have changed the outcome of his trial. If it does, he must be given a new trial. If the records maintained by CYS contain no such information, or if the nondisclosure was harmless beyond a reasonable doubt, the lower court will be free to reinstate the prior conviction.
Id. at 58, 107 S.Ct. 989.
Previously, we have said that unfounded reports of sexual abuse contained in DHS records could not be disclosed to a criminal defendant. Fox v. State , 314 Ark. 523, 863 S.W.2d 568 (1993) ; Douthitt v. State , 326 Ark. 794, 935 S.W.2d 241 (1996). However, those cases interpreted prior statutory law, which did not allow the disclosure to defendants of unfounded reports of sexual abuse contained in DHS records. Current Arkansas law allows the disclosure in a criminal case of unsubstantiated reports of child maltreatment contained in DHS records. Ark. Code Ann. § 12-18-910 (Supp. 2017). Just as in Ritchie , where the Pennsylvania statute allowed for disclosure, our statute does as well. Therefore, we believe that Ritchie is directly on point in reviewing this matter. Based upon Ritchie , we hold that the circuit court erred by failing to review the DHS file to determine whether it contains information that was material to Taffner's defense.
b. Remedy
Because we find that the circuit court erred with respect to the DHS file, we must determine the appropriate remedy. In doing so, we again look to Ritchie. Although Taffner suggests that the remedy is to grant him a new trial, we disagree. In Ritchie , the Supreme Court observed that the Pennsylvania statute did not prohibit all disclosure of CYS records. Because the Pennsylvania statute allowed disclosure of CYS records pursuant to a court order, the Supreme Court concluded that the statute did not prevent all disclosure in a criminal prosecution. Id. Our statute, like the Pennsylvania statute in Ritchie , allows disclosure of unsubstantiated reports to the parties in a criminal case under the terms of a protective order issued by the court. Ark. Code Ann. § 12-18-910(f)(4). We believe that the approach set forth in Ritchie is applicable. This matter must be remanded so the circuit court can conduct an in camera review of the file and determine if Taffner is entitled to any of the information it contains.[3]
2. Questioning permitted
Taffner also argues that he was not allowed to conduct a reasonable cross-examination of BT because the court limited him to asking her whether she previously made a false allegation of sexual *438 abuse against her biological father, and when that charge was made. Taffner generally alleges that he should have been allowed to inquire more fully into the circumstances of BT's false allegation.
The Sixth Amendment's Confrontation Clause provides a criminal defendant the right to physically face those who testify against him, and the right to conduct effective cross-examination. Davis , supra. The denial of a defendant's right to expose the jury to facts from which jurors could appropriately draw inferences relating to a witness's reliability is a constitutional error. Winfrey v. State , 293 Ark. 342, 738 S.W.2d 391 (1987). Here, Taffner was able to question BT about the truth of her prior allegation. BT testified, although with some equivocation, that her allegation against her biological father was false. Taffner was therefore able to successfully impeach BT regarding the allegation. Based on the record before us, we cannot say that the circuit court denied Taffner the right to expose the jury to facts from which the jurors could draw inferences relating to BT's reliability. See id. We do, however, recognize that Taffner's argument for more extensive questioning of BT may have been different depending on the information contained in the DHS file.[4] On remand, if the DHS file contains evidence material to Taffner's defense, he may argue that the evidence demonstrates a need for additional questioning of BT.
D. Juror misconduct
Finally, Taffner argues that the circuit court abused its discretion when it denied his motion for a new trial based on a juror's failure to reveal in voir dire her role as a court-appointed child advocate. After the trial, Taffner learned that juror Michelle Mullins was a volunteer with Court Appointed Special Advocates for Children (CASA). Taffner then filed a motion for a new trial, arguing that Mullins concealed this relationship during voir dire. The decision whether to grant or deny a motion for new trial lies within the sound discretion of the circuit court, and this court will reverse only if there is a manifest abuse of discretion. Harrison v. State , 371 Ark. 652, 269 S.W.3d 321 (2007). A circuit court's factual determinations on a motion for a new trial will not be reversed unless clearly erroneous, and the circuit court determines issues of credibility. Smart v. State , 352 Ark. 522, 104 S.W.3d 386 (2003).
The party moving for a new trial bears the burden of proving, first, that juror misconduct occurred, and second, that there was a reasonable probability of resulting prejudice. Holsombach v. State , 368 Ark. 415, 246 S.W.3d 871 (2007). The court does not presume prejudice but rather presumes that jurors are unbiased and qualified to serve, and the appellant has the burden to show otherwise. Holloway v. State , 363 Ark. 254, 213 S.W.3d 633 (2005).
Taffner faults Mullins for not responding to two questions asked of venire members. Mullins was silent when asked if she had "been employed by or are associated with any party, witness, or attorney." Mullins was also asked if she "had any prior contact with law enforcement." Mullins's silence in response to the questions does not amount to misconduct. First, Mullins was not a state employee. Second, if the court were to conclude that Mullins's work with CASA was an association with the State, virtually anyone who had any involvement with the State or courts could be prevented from serving on a jury if asked these specific questions. Third, Mullins's *439 incidental contact with court bailiffs during her work with CASA is not sufficient to establish prior contact with law enforcement. Further, Taffner has not established a reasonable probability of prejudice. Therefore, Taffner is not entitled to reversal on this point.
III. Conclusion
In sum, we affirm the circuit court's rulings denying Taffner's motions for a directed verdict and for a new trial. The circuit court erred by not allowing Zovak's testimony, but we conclude that there was no prejudice. The circuit court also erred by not conducting an in camera review of the DHS file to determine if it contained information material to Taffner's defense; therefore, we remand for further proceedings. On remand, the circuit court must conduct an in camera review of the DHS file pursuant to the procedure set forth in Ritchie. If the file contains "information that probably would have changed the outcome" of the trial, Taffner should receive a new trial unless "the nondisclosure was harmless beyond a reasonable doubt." Ritchie, at 58, 107 S.Ct. 989. If the file contains no evidence likely to change the outcome of the trial, or if the nondisclosure is harmless beyond a reasonable doubt, the circuit court should leave the verdicts undisturbed, as prescribed by Ritchie.
Affirmed in part; remanded for further proceedings.
Wynne, J., concurs in part and dissents in part.
Baker and Hart, JJ., dissent.

The order was signed on March 15, 2016, and entered the next day.

Although BT's father's parental rights were terminated, Judge Zimmerman relied on Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(a) (Supp. 2009), and § 9-27-341(b)(3)(B)(vii)(a) , which involve grounds for termination other than sexual abuse. The court did not rely on § 9-27-341(b)(3)(B)(vi), which provides for immediate termination of parental rights when the juvenile has been the victim of sexual abuse perpetrated by the parent.

Justice Hart in dissent observes that suppression by the prosecution of evidence favorable to the accused violates due process where the evidence is material either to guilt or punishment. Although she finds a Brady violation in Taffner's lack of access to the DHS file, we believe that determination is premature in light of the fact that the file was never reviewed and the actual contents of the file are not part of the record.

Outside the presence of the jury, BT testified that the allegation she made against her biological father was false. At trial, BT's testimony was equivocal, but Taffner's attorney did not make any further argument at that time that additional questioning should be allowed.