Cite as 2026 Ark. 28

# SUPREME COURT OF ARKANSAS

**No.** CR–24–36

| | | |
|---|---|---|
| TYLER EDWARD TAIT | | **Opinion Delivered:** February 12, 2026 |
| | APPELLANT | APPEAL FROM THE CHICOT COUNTY CIRCUIT COURT [NO. 09CR-21-90] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE CREWS PURYEAR, JUDGE |
| | APPELLEE | <u>AFFIRMED; COURT OF APPEALS OPINION VACATED.</u> |

**CODY HILAND, Associate Justice**

Tyler Tait was convicted by a Chicot County jury of second-degree murder. On appeal, Tait argues (1) there was insufficient evidence to support his conviction; (2) the circuit court erred by instructing the jury on a lesser-included offense; and (3) the circuit court erred in denying his motion for a new trial on the basis of juror misconduct. We affirm.

## I. *Factual Background*

At 1:07 p.m. on October 11, 2021, Tyler Tait, an emergency-room physician, and his girlfriend, Moria Kinsey, were traveling on U.S. Highway 65 near Lake Village coming back from Alabama. At approximately 1:12 p.m., Tait called 911 and reported that Kinsey was allegedly having a seizure.[1] After law enforcement and emergency services responded

---

[1]The time of travel was confirmed via timestamp on a liquor store surveillance video, and the time of the 911 call was confirmed via testimony of a Chicot County Sheriff's Office deputy regarding his dispatch log. It is uncontroverted that Tait was the only person with Kinsey during this period of time.

and several passersby attempted to render aid, Kinsey was transported to Chicot Memorial Hospital where she was pronounced dead. Tait was arrested and charged with first-degree murder.

At trial in June 2023, the pertinent facts were presented by an array of witnesses. Brayden Brantley, a farmer, testified that while he was driving past a truck pulled over in the median of the highway, he saw Tait drag Kinsey's body on the ground toward the front of his vehicle where "he dropped her and then did three pumps on her—like CPR. And then he just got up." Another passerby, retired nurse Jimmy Hicks, stopped at the scene and called 911 after seeing a man (not Tait) performing chest compressions. After Hicks observed Kinsey bleeding from both her nose and her mouth, he assisted with resuscitative efforts until the ambulance arrived. Hicks testified that during this time, Tait was acting irrationally—"Bizarre actions. Going around just sounded like he was talking to himself . . . I've been around people that are, I'll say, concerned about a person. They want to do something to help. This person didn't do anything to try to help." In fact, Hicks continued, "when the police got there . . . [Tait] took off and went down the highway. Went down there and sat down . . . and never offered any kind of suggestion of what we might do to help the lady."

Arron Dillard, an officer with the Arkansas Game and Fish Commission, testified regarding his interaction with Tait—an encounter that was captured on body camera and played for the jury. When Dillard approached Tait, Tait's first statement was "[d]on't do this. Don't do this. Please. I didn't f***ing do nothing." A few moments later, without any

prompts, Tait again declared, "I didn't f★★★ing do this. F★★★ this shit. . . . F★★★ this. This ain't on me. Nuh uh. I didn't f★★★ing touch her. . . . I ain't never done nothing wrong."

The responding paramedics testified that upon their arrival, Kinsey was unresponsive and had no pulse or respirations. They transported Kinsey by ambulance while continuing CPR and attempting to secure her airway through intubation. The first attempt failed because the amount of blood in Kinsey's throat obstructed their visualization, but a second intubation attempt was successful.

Arkansas State Police Special Agent Bryan Albritton testified regarding his recorded interview of Tait, which was also introduced into evidence and played for the jury. Tait told Albritton that he and Kinsey were driving down the road when he looked over and saw that she was "contorting," which he believed to be a seizure despite having no knowledge of Kinsey ever experiencing one before. Tait again denied harming Kinsey and maintained, for a portion of his interview, that she died as the result of "what appeared to be a medical event." However, as the interview continued, Tait offered multiple, extremely inconsistent explanations for Kinsey's condition—she had an allergic reaction to fried chicken, she contracted tuberculosis after an armadillo licked her ankle, his mother was somehow responsible, or she was possessed by a demon.

The State's most crucial witness, Dr. Theodore Brown, the chief medical examiner at the Arkansas State Crime Laboratory who performed Kinsey's autopsy, testified that the cause and manner of death was homicide by strangulation. In support of this conclusion, he identified vascular congestion in Kinsey's cheeks, forehead, nose, and periorbital areas. He explained that such congestion occurs when blood is forcefully pushed into surrounding

tissues, producing a red congested appearance of the skin. Dr. Brown observed this vascular congestion on the anterior portion of Kinsey's neck as well as an area of pallor—an area lacking congestion. Brown attested that although the pallor alone was not indicative of strangulation, it was a relevant factor in forming his ultimate opinion when considered alongside the internal examination of Kinsey's neck, which revealed a significant amount of blood extending from her superficial neck muscles through all layers of her deep neck musculature. Dr. Brown further described this as diffuse, extensive hemorrhaging throughout her neck, including the deep muscles located in front of the airway. He explained that such profuse bleeding indicated "significant trauma" to her neck, consistent with blunt-force trauma or compression of her neck, including strangulation. Dr. Brown testified that "the answer of why she's dead is in her neck."

Dr. Brown also noted a fracture of Kinsey's thyroid cartilage, which further evidenced trauma to her neck. He opined that injuries sustained during medical intervention—including fractured ribs and a fractured sternum—did not contribute to Kinsey's death, explaining that such injuries are commonly associated with CPR. He observed an endotracheal tube in place but found no obvious injury to the airway resulting from its placement. He did not believe any of Kinsey's neck injuries were caused by either medical treatment or natural causes.

Although Dr. Brown acknowledged that most strangulation cases present with external signs of trauma, he noted that Kinsey did not exhibit petechial hemorrhaging in her eyes. He explained, however, that strangulation can occur without external findings, highlighting the importance of a full autopsy with an internal examination of the neck.

Brown testified that unconsciousness could occur within ten to twenty seconds when significant pressure is applied to the neck and that continuous pressure for two to three minutes can be fatal. Finally, he testified that no illicit drugs were detected in Kinsey's body and that only a trace amount of alcohol was present.

On cross-examination, Dr. Brown acknowledged that the thyroid cartilage damage could have resulted from a failed intubation. He testified that Kinsey's liver was mildly enlarged and exhibited fatty changes, a condition that can be associated with chronic alcohol use. Dr. Brown explained that he did not conduct a microscopic examination of Kinsey's brain because he did not believe it was necessary despite reports that Kinsey had experienced a seizure. He stated that his gross examination of the brain was sufficient to reach a conclusion regarding the manner of death and that no additional neurological studies were required. Dr. Brown recognized that he was not informed of a report expressing concern about Kinsey's heavy alcohol consumption in the week preceding her death. He testified that abrupt cessation of alcohol use can result in withdrawal symptoms, including seizures, which in some cases could cause death.

After the State rested and the court denied the defense's motion for a directed verdict, the defense presented its case. Dr. Robert Bux, a forensic pathologist and Tait's expert witness, testified that he disagreed with Dr. Brown. He stated that, in his opinion, he would classify Kinsey's death as "undetermined" on the basis of her tachycardia in the days preceding her death, her alcoholism, and bruising across her body. Dr. Bux opined that the extensive bleeding in Kinsey's neck resulted from a sternal fracture sustained during CPR, with the blood tracking into her neck due to the positioning of her body. He further testified

5

that the fractured thyroid cartilage could have been caused by the misplacement of the tracheal tube during the initial intubation attempt.

Tyler Tait took the stand in his defense and denied killing Kinsey, claiming again that she suffered from some sort of seizure. During cross-examination, the State introduced recent text messages between Tait and Kinsey in which Tait accused Kinsey of cheating on him. The texts included veiled threats such as, "I know where your house is too," "Do you believe in the Muslim [adage] of eye for eye," and "Blood/blood."

After the defense rested and the court denied the renewed motion for a directed verdict, Tait objected to the State's request for a jury instruction on lesser-included offenses because his defense was absolute innocence. The circuit court overruled his objection and found there was a rational basis to submit the case on second-degree murder as well as first-degree murder as initially charged. The jury ultimately found Tait guilty of second-degree murder and sentenced him to thirty years in the Arkansas Division of Correction and a fine of $15,000.

Several days later, Tait filed a motion for a new trial claiming juror misconduct and attached an affidavit of juror ST, which provided, in part, the following allegations:

> At the beginning of jury deliberations on June 23, juror [MJ] said while the room was getting seated "I guess y'all have all checked this guy out." Someone said "Not me, I haven't!" I then said "Don't say that again, we can't do that." It was clear to me she meant the Internet. I also believe [MJ] said "Well I have."

6

The circuit court held a hearing in which both jurors ST and MJ testified. After the hearing, the circuit court denied the motion. This appeal followed.[2]

## II. *Sufficiency of the Evidence*

In Tait's first point on appeal, he claims the circuit court erred by denying his motion for directed verdict on the charge of second-degree murder. Specifically, he claims that his conviction is not supported by substantial evidence because the conviction rests solely on speculation and conjecture as to the cause and manner of Kinsey's death.

We treat a motion for directed verdict as a challenge to the sufficiency of the evidence. *Price v. State*, 2019 Ark. 323, at 4, 588 S.W.3d 1, 4. In reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State. *Edmond v. State*, 351 Ark. 495, 95 S.W.3d 789 (2003). We will affirm a conviction if substantial evidence exists to support it. *Id.* Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Dortch v. State*, 2018 Ark. 135, at 5, 544 S.W.3d 518, 522. This court does not weigh the evidence presented at trial or assess the credibility of the witnesses, because those are matters for the fact-finder. *Drennan v. State*, 2018 Ark. 328, at 6, 559 S.W.3d 262, 266. The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.* Further, circumstantial evidence may provide a basis to support a conviction,

---

[2]While the court of appeals affirmed the conviction, we nonetheless granted the petition for review to clarify a perceived inconsistency between the issued opinion and current Arkansas law. *See* Ark. Sup. Ct. R. 1–2(c)(2). When we grant a petition for review, we consider the appeal as though it had originally been filed in this court. *Parsons v. Preferred Family Healthcare, Inc.*, 2023 Ark. 56, 662 S.W.3d 654.

7

but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Howard v. State*, 2016 Ark. 434, at 12, 506 S.W.3d 843, 850. Whether the evidence excludes every other hypothesis is for the jury to decide. *Id.*, 506 S.W.3d at 850. Once it is determined that the evidence is sufficient to go to the jury, the question whether the circumstantial evidence excludes any other hypothesis consistent with innocence is for the jury to decide. *Mulkey v. State*, 330 Ark. 113, 117, 952 S.W.2d 149, 151 (1997).

Considering these standards, we turn to Tait's conviction of second-degree murder. A person commits second-degree murder if he knowingly causes the death of another person under circumstances manifesting extreme indifference to the value of human life, or with the purpose of causing serious physical injury to another person, the person causes the death of any person. Ark. Code Ann. § 5-10-103 (Repl. 2013).

Tait argues on appeal that his expert, Dr. Bux, "properly opined that the intellectually honest conclusion as to Kinsey's death must be 'undetermined'" because the "phenomena" observed on Kinsey's body were from preexisting conditions, the result of medical intervention, or consistent with natural causes. However, Dr. Brown's testimony was inconsistent with Dr. Bux's opinion. He testified as to his contrary belief and stated that in light of the vascular congestion, extensive hemorrhaging, and the physical indications of "significant trauma" to her neck, Kinsey died as a result of homicide by strangulation. Tait claims that Dr. Brown's opinion was purely speculative and was not a "reasoned, unbiased conclusion based upon the actual evidence." Thus, we must turn to credibility.

Here, the primary challenge of sufficiency boils down to a battle of the experts—Dr. Brown's versus Dr. Bux's testimony regarding Kinsey's cause and manner of death.[3] Although medical evidence and expert testimony can be highly persuasive, the jury is not bound to accept the opinion testimony of any witness as true or conclusive, including the opinion testimony of experts. *Kaufman v. State*, 2013 Ark. 126, at 6. As the jury was privy to the extensive, albeit competing, opinions of both experts, it was entitled to believe the testimony of the State's witness over that of Tait's. Thus, we hold that Tait's sufficiency argument fails because there was substantial evidence for the jury to conclude that Tait committed the offense of second-degree murder.

## III. *Jury Instructions*

In his second point, Tait claims that the circuit court erred by instructing the jury on the lesser-included offense of second-degree murder. First, Tait argues that because he made a wholesale denial of any offense being committed, the circuit court should not have instructed the jury as to second-degree murder pursuant to *Doby v. State*, 290 Ark. 408, 720 S.W.2d 694 (1986). Second, Tait claims that independent of the *Doby* error, the second-degree-murder instruction contains language that is not only unconstitutionally vague but

---

[3]While not the focus of Tait's argument, we also note the issue of Tait's own credibility. The jury heard testimony and saw a video of Tait's "bizarre" behavior at the scene; was presented with text messages between Tait and Kinsey indicating a troubled relationship; and listened to Tait's recitation of incoherent and paranormal potential explanations of causation given to the state police investigator. *See Howard v. State*, 2016 Ark. 434, at 13, 506 S.W.3d 843, 850 (holding that false, improbable or contradictory statements to explain suspicious circumstances may be considered by the jury as evidence of guilt). Thus, in addition to consideration of the expert-witness testimony, there was ample evidence for the jury to call into question the credibility of Tait's own testimony that he did not cause Kinsey's death.

9

also improper because it adds an element of the crime not included in the definition of first-degree murder, meaning it is not a true lesser offense.

Arkansas Code Annotated section 5-1-110(c) (Repl. 2013) provides:

> The court is not obligated to charge the jury with respect to an included offense unless there is a rational basis for a verdict acquitting the defendant of the offense charged and convicting him or her of the included offense.

An instruction on a lesser-included offense is appropriate when it is supported by the slightest evidence. *Grillot v. State*, 353 Ark. 294, 318, 107 S.W.3d 136, 150 (2003). This court will not overturn a circuit court's ruling on whether to submit a jury instruction absent an abuse of discretion. *E.g.*, *Green v. State*, 2013 Ark. 497, at 35, 430 S.W.3d 729, 752.[4]

Tait asserts that *Doby* created a bright-line rule that it is "improper to instruct the jury on a lesser-included offense if the defendant denies all culpability." He is mistaken. Instead, it is entirely dependent on the specific fact pattern at issue. In *Doby*, Doby was convicted of possession of a controlled substance with intent to deliver and theft by receiving (a pistol). For its case, the State presented the testimony of two officers: one of the officers testified that Doby admitted possessing large quantities of drugs that he had sold and a gun that he used for protection. The other officer testified that upon Doby's arrest for unrelated charges, Doby brandished a weapon that had been reported stolen. In contrast, Doby himself

---

[4]A person commits first-degree murder if "with a purpose of causing the death of another person, the person causes the death of another person." Ark. Code Ann. § 5-10-102(a)(2). A person commits murder in the second degree if the person knowingly causes the death of another person under circumstances manifesting extreme indifference to the value of human life or with the purpose of causing serious physical injury to another person, the person causes the death of any person. Ark. Code Ann. § 5-10-103.

took the witness stand and denied possessing any drugs, having a pistol, or making a statement to the police. His defense was that there was no truth at all to the State's case.

On appeal, Doby argued that, as a matter of law, the circuit court erred in refusing to instruct the jury that it could find him guilty of the lesser crime of possession of a controlled substance. This court found that the circuit court was correct in refusing the lesser-included instruction because there was no rational basis to give it. Specifically, we stated the following:

> Doby rested his entire defense on his credibility against the officers. So as a practical matter, it came down to who the jury should believe. There would be no rational basis to find the officers lied in part in this case. Their testimony so sharply conflicted with Doby's that it would not be reasonable to expect a jury to pick and choose and come up with a finding of a lesser offense when to do so would require a finding that Doby was a liar and the officers liars in part. If Doby had admitted possessing the drugs, it might make sense to require the charge of the lesser offense. But his defense was that he was entirely innocent of any crime: he possessed nothing. Therefore, the jury only had one question to decide, whether he was guilty as charged.

*Doby*, 290 Ark. at 412, 720 S.W.2d at 696.

The principle of law derived from the *Doby* case was meant to be simple—a lesser-included-offense instruction need not be given unless there is a rational basis after examination of the State's evidence. However, we recognize that the interpretation and application of this principle has been stretched far beyond that of the original intent. In every scenario, the fact-determinative analysis is to be conducted on a specific case-to-case basis regardless of whether the party requesting the instruction is the State or the defense. This is true regardless of whether the defense claims total innocence. The test is whether a

11

rational basis for the instruction exists on the basis of the evidence presented. If the slightest evidence exists, the instruction of a lesser-included offense is appropriate. To the extent that any post-*Doby* cases have misconstrued the law as anything else, they are hereby overruled. *See, e.g.*, *State v. Jones*, 321 Ark. 451, 903 S.W.2d 170 (1995) (citing *Vickers v. State*, 320 Ark. 437, 898 S.W.2d 26 (1995); *Franklin v. State*, 314 Ark. 329, 863 S.W.2d 268 (1993); *Vickers v. State*, 313 Ark. 64, 852 S.W.2d 787 (1993); *Fry v. State*, 309 Ark. 316, 829 S.W.2d 415 (1992); *Watson v. State*, 308 Ark. 444, 825 S.W.2d 569 (1992); *Flurry v. State*, 290 Ark. 417, 720 S.W.2d 699 (1986)).

In applying the *Doby* principle to the facts of this case, the cases are easily distinguishable. In *Doby*, the issue for the jury was whether Doby possessed and sold drugs or whether he possessed nothing at all. Here, the circuit court properly assessed the evidence bearing on the lesser-included offense of second-degree murder. Dr. Brown testified about the duration of time it would take to cause Kinsey's injuries—about ten to twenty seconds for a person to become unconscious with a significant amount of pressure to the neck, and if that pressure were applied continuously for two to three minutes, death would likely be the outcome. Dr. Brown determined that the cause of death was strangulation, and the evidence showed that Tait was the only person with Kinsey during the time in which strangulation could have occurred. This constitutes, at the least, the "slightest evidence" that Tait either knowingly caused Kinsey's death under circumstances manifesting extreme difference to the value of human life or purposely caused serious physical injury to Kinsey that caused her death. Therefore, we cannot say that the circuit court abused its discretion in giving the second-degree-murder instruction.

As to the argument regarding whether the language "circumstances manifesting extreme indifference to the value of human life" is unconstitutionally vague, both of Tait's arguments are rejected because both issues have already been decided. *See Jefferson v. State*, 372 Ark. 307, 316–17, 276 S.W.3d 214, 222–23 (2008) (phrase "under circumstances manifesting extreme indifference to the value of human life" is not unconstitutionally vague);[5] *McCoy v. State*, 347 Ark. 913, 922–24, 69 S.W.3d 430, 437–37 (2002) (second-degree murder "under circumstances manifesting extreme indifference to the value of human life" is a lesser-included offense of purposeful first-degree murder.)

## IV. *Jury Misconduct*

For his final point on appeal, Tait argues that the circuit court erred by denying his motion for a new trial in which he alleged juror misconduct. The decision whether to grant a new trial is left to the sound discretion of the circuit court, and the court's decision is not reversed in the absence of an abuse of discretion or manifest prejudice to the complaining party. *Johnson v. State*, 2017 Ark. 106, at 2, 515 S.W.3d 116, 117. Abuse of discretion is a high threshold that does not simply require error in the circuit court's decision but requires that the circuit court act improvidently, thoughtlessly, or without due consideration. *Arnold v. State*, 2022 Ark. 191, at 7, 653 S.W.3d 781, 787. A circuit court's factual determination on a motion for a new trial will not be reversed unless clearly erroneous. *Johnson*, 2017 Ark. 106, at 3, 515 S.W.3d at 117. A finding is clearly erroneous, even if there is evidence to support it, when the appellate court, after review of the entire evidence, is left with the

_____

[5]On appeal, Tait concedes that the void-for-vagueness issue has been continuously rejected.

definite and firm conviction that a mistake has been made. *Dortch*, 2018 Ark. 135, at 12, 544 S.W.3d at 525. As for credibility, the circuit court makes such determinations. *Taffner v. State*, 2018 Ark. 99, at 14, 541 S.W.3d 430, 438. The party moving for a new trial bears the burden of proving first that juror misconduct occurred and second that there was a reasonable probability of resulting prejudice. *Id.*, 541 S.W.3d at 438. The court does not presume prejudice but rather presumes that jurors are unbiased and qualified to serve, and it is the appellant's burden to show otherwise. *Id.*, 541 S.W.3d at 438.

Here, as stated above, a few days after his trial concluded, Tait filed a motion for a new trial alleging that "extraneous prejudicial information was improperly brought to the jury's attention" as a result of comments made by juror MJ. On the basis of these allegations, the circuit court held a hearing in which both jurors ST and MJ were summoned to testify. ST testified first, repeating, for the most part, his previously submitted affidavit. He stated that before the official jury deliberations began, MJ said, "I guess y'all have checked this guy out." ST testified that he immediately cautioned MJ about such statements, saying, "[D]on't say that again . . . we are not supposed to do that," but MJ nonetheless responded, "Well I have." When questioned about whether MJ specifically mentioned the internet, ST said that was the "implication"—later asserting it was his personal belief that MJ had engaged in online research during the trial. In response to the State's questions, ST further testified that MJ *may* have said that "th[ere's] some bad stuff on this guy," but he could not be certain. This allegation was not disclosed in the affidavit submitted with Tait's motion.

MJ testified next and denied any recollection of making the alleged statements. She also denied conducting any research on Tait before or during the trial, stating that she knew

nothing about the case before deliberations began other than what she had learned in the courtroom. As a result of the "diametrically opposed testimony," defense counsel requested that the hearing be "recessed and reconvened" after the other ten jurors were summoned to testify.

The circuit court denied the request, stating that if Tait wanted to question the remaining jurors, he should have issued subpoenas for those witnesses, but he did not. Instead, the court did what Tait asked for in his motion, which was to inquire of jurors ST and MJ. Based on the testimony presented, the circuit court made a credibility determination against ST and in favor of MJ, finding that she was "unequivocal" that she did not research Tait before or during trial and made no such announcement otherwise. Further, the court stated that what it found most troubling was ST's failure to mention in his affidavit that MJ said, "[T]here's some bad stuff on this guy." Specifically, the court stated, "I just don't find it believable that he wouldn't have included it in his affidavit. I'm judging credibility based on that."

Here, the circuit court agreed that an inquiry was necessary, summoned the two jurors to a hearing, questioned them about the allegations, and made credibility determinations based on the testimony. Such findings led to the circuit court's ruling that Tait failed to meet the first prong—that juror misconduct had occurred. The court's decision rested on a credibility determination, which we are in no position to overturn on appeal. Accordingly, we conclude that the circuit court did not abuse its discretion by denying Tait's motion for a new trial.

Affirmed; court of appeals opinion vacated.

15

Special Justices MILTON FINE and TROY BRASWELL join.

WOMACK and BRONNI, JJ., concur.

BAKER, C.J., and HUDSON, J., not participating.

**SHAWN A. WOMACK, Justice, concurring**. I join the majority's decision to affirm Tyler Tait's conviction for second-degree murder. But I cannot join the majority's analysis about lesser-included-offense instructions—at least insofar as the majority contends that a party is entitled to a lesser-included instruction when the "slightest evidence" supports it.

This court has often repeated the "slightest evidence" phrase when discussing lesser-included instructions but has "made no effort to justify its 'slightest evidence' framing" that it created out of whole cloth.[6] And even worse, we have failed to adhere to this standard when analyzing whether a defendant (or the State) is entitled to a lesser-included instruction.[7]

Instead of keeping with "[t]he court's often-repeated standard for lesser-included instructions [that] isn't the result of principled statutory interpretation or considered analysis[,]" I would take this opportunity to refine our standard and establish one that makes sense, is not self-contradictory, and can be squared with the relevant statute.[8] That is, a circuit court should be required to give a lesser-included instruction only when there is "a sound evidentiary basis for acquitting the defendant of the charged crime and instead

---

[6]*Parker v. State*, 2025 Ark. 55, at 11, 709 S.W.3d 807, 815 (Bronni, J., concurring).

[7]*See Cypert v. State*, 2025 Ark. 11, at 10, 705 S.W.3d 496, 501 (compiling cases).

[8]*Parker*, 2025 Ark. 55, at 10, 14, 709 S.W.3d at 814, 816 (Bronni, J., concurring).

convicting him of the lesser[.]"[9]  For the reasons explained in the majority opinion, there is a sound evidentiary basis for acquitting Tait of first-degree murder and, instead, convicting him of second-degree murder.  So I, too, would affirm.

I respectfully concur.

BRONNI, J., joins.

*Jeff Rosenzweig* and *Robert G. Bridewell*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Walker K. Hawkins*, Ass't Att'y Gen., for appellee.

---

[9]*Id*. at 14, 709 S.W.3d at 816 (Bronni, J., concurring).

17