Cite as 2023 Ark. 149

# SUPREME COURT OF ARKANSAS
**No.** CR–23–202

|  |  |  |
|---|---|---|
|  |  | **Opinion Delivered:** October 26, 2023 |
| MICHAEL DOERHOFF | | |
| | APPELLANT | APPEAL FROM THE WHITE COUNTY CIRCUIT COURT |
| V. | | [NO. 73CR-22-48] |
| STATE OF ARKANSAS | | HONORABLE MARK PATE, JUDGE |
| | APPELLEE | |
| | | AFFIRMED. |

**KAREN R. BAKER, Associate Justice**

On August 19, 2022, a White County Circuit Court jury convicted appellant, Michael Doerhoff, of first-degree murder and sentenced him to a term of life imprisonment. On appeal, Doerhoff presents two points: (1) the circuit court erred in giving a non-model jury instruction regarding justification; and (2) the circuit court erred in refusing to give Doerhoff's proffered jury instruction regarding excessive force. We affirm.

## I. *Facts and Procedural History*

This appeal stems from the death of Tommy Byrd on December 10, 2021. On January 31, 2022, Doerhoff was charged with capital murder. Doerhoff's jury trial was held August 16–19, 2022, and Doerhoff was convicted of the lesser-included offense of first-degree murder.

Because Doerhoff does not challenge the sufficiency of the evidence, only a brief recitation of the facts is necessary. Byrd lived with his brother Wayne in Bradford, less than a mile from Doerhoff's home, and both brothers socialized with Doerhoff on occasion. On

December 10, 2021, Wayne and Byrd drove to Doerhoff's home just before 11:00 a.m. so that Wayne could take photographs of a water tank that he had agreed to sell for Doerhoff. Approximately thirty minutes later, Wayne announced that he needed to return home and Doerhoff asked Byrd to stay and have a beer with him. Wayne testified that Byrd stayed behind with Doerhoff when he left, but at around 2:00 p.m., he heard sirens traveling in the direction of Doerhoff's home. Wayne went back to check on Byrd, at which time he saw Byrd lying on the ground and Doerhoff in handcuffs.

On February 8, 2022, Doerhoff was interviewed by detectives with the White County Sheriff's Office. During the interview, Doerhoff explained to detectives that on December 10, 2021, he and Byrd drank a couple of beers and, at some point during their conversation, Byrd said that he was ready to go home. Doerhoff claimed that he offered to drive Byrd home, and Byrd replied that he was a black belt and was going to "whip" Doerhoff and take his car. Doerhoff claimed that he picked up a nearby machete, fearing that Byrd might grab it and overpower him, and said, "[Y]ou're not whipping me, and you're not taking my car." Doerhoff told detectives that he followed Byrd off the porch and a struggle ensued after Byrd allegedly tried to take the machete from him. Doerhoff stated that he shoved Byrd to the ground and cut his throat, and after he felt Byrd stop struggling, Byrd's body twitched and Doerhoff "chopped him some more" to ensure that Byrd would not get up and attack him.

Detective Josh Biviano with the White County Sheriff's Office testified that Doerhoff made a total of eighteen phone calls—between 12:30 p.m. and 1:32 p.m.—to various individuals, a bail bondsman, a funeral home, the Bald Knob Police Department, and the White County Sheriff's Office. The jury heard a recording of the call Doerhoff had

2

made to the Bald Knob Police Department, during which he said that he had a "dead man in [his] yard" and that he needed someone to come "scrape this shit up." When Doerhoff was informed that his address was outside city limits, he replied, "I don't mind killing 'em but I don't bury nobody." Doerhoff was taken into custody when law enforcement arrived on the scene.

Dr. Christy Cunningham, an associate medical examiner at the Arkansas State Crime Lab, testified that Byrd sustained over twenty injuries—including the severing of his internal jugular vein, his external jugular vein, and his common carotid artery—and that the wounds on his hands and arms were consistent with defensive-type injuries. Dr. Cunningham testified further that, although several of the injuries could have individually been fatal, she was unable to determine the sequence of the injuries.

At trial, two jury instructions related to Doerhoff's defense of justification were in controversy. It was undisputed that Doerhoff was entitled to a justification instruction and that the model jury instruction, AMI Crim. 2d 705, did not accurately state the law because it had not been modified to account for the changes set forth in the "Stand Your Ground" law that became effective in July 2021. *See* Act 250 of 2021.

However, Doerhoff first argued that the modified version of the model jury instruction proffered by the State improperly imposed an affirmative duty to retreat when that duty had been eliminated by Act 250. Specifically, Doerhoff asserted that the language in the State's proffered instruction stating that he was not required to retreat if certain conditions were met, as set forth in Act 250, would imply to the jury that there was a statutory duty to retreat even though the legislature intentionally struck the previous language that imposed that duty. *See* Ark. Code Ann. § 5-2-607(b) (Supp. 2021). Doerhoff

argued that this was an inconsistency in the amended statute that rendered it ambiguous, and the language should therefore be construed in his favor pursuant to the rule of lenity. The circuit court declined to submit Doerhoff's proffered instruction removing all references regarding a duty to retreat and instead submitted to the jury a modified version of the model jury instruction that incorporated the entirety of the amended language contained in section 5-2-607(b) and the statutes that are referenced therein. The circuit court reasoned that it "is the law that the legislature created and it is the law that we're all having to live by."

Relying on Arkansas case law, Doerhoff then argued that, because the State would likely assert that justification was not a defense to the charged offense because he employed excessive force, he was entitled to a non-model jury instruction explaining that the State had the burden of proving that any alleged excessive portion of the force used is what caused Byrd's death. The State responded that the case law cited by Doerhoff did not support his position, and that the non-model instruction was unnecessary because the language from the model instruction accurately states the law. The circuit court declined to submit Doerhoff's proffered excessive-force jury instruction.

On August 19, 2022, Doerhoff was convicted and sentenced as described above. This timely appeal followed.

II. *Law and Analysis*

A. Standard of Review

A circuit court's ruling on whether to submit a jury instruction will not be reversed absent an abuse of discretion. *Mackrell v. State*, 2022 Ark. 93, at 3, 643 S.W.3d 12, 15. Abuse of discretion is a high threshold that does not simply require error in the circuit court's

decision, but requires that the circuit court act improvidently, thoughtlessly, or without due consideration. *Arnold v. State*, 2022 Ark. 191, at 7, 653 S.W.3d 781, 787.

## B. Points on Appeal

### 1. *Justification jury instruction*

For his first point on appeal, Doerhoff contends that the circuit court erred in giving a non-model jury instruction regarding justification. Specifically, Doerhoff asserts that the instruction submitted to the jury, a modified version of the model instruction incorporating the amended language in Arkansas Code Annotated section 5-2-607(b), did not correctly state the law because it implied that he had a duty to retreat even though Act 250 deleted the language that directly imposed that duty. Doerhoff contends that, for this reason, section 5-2-607(b) as amended is ambiguously worded in a way that could confuse the jury. Therefore, Doerhoff asserts that we should give effect to the legislature's intent in striking the previous statutory language imposing an affirmative duty to retreat, apply the rule of lenity to resolve the alleged ambiguity in his favor, and reverse the circuit court. The State responds that the circuit court did not abuse its discretion by modifying the jury instruction to reflect the language contained in section 5-2-607(b), because the model instruction did not accurately state the law in effect at the time of the offense. The State argues further that it is unnecessary to resort to statutory interpretation because the statute is unambiguous. We agree.

We have explained that there is a presumption that the model jury instruction is a correct statement of the law. *Kinsey v. State*, 2016 Ark. 393, at 11, 503 S.W.3d 772, 779. Therefore, non-model jury instructions are to be given only when the circuit court finds

that the model instructions do not accurately state the law or do not contain a necessary instruction on the subject at hand. *Id*. at 10–11, 503 S.W.3d at 778–79.

Here, it is undisputed that the model jury instruction, AMI Crim. 2d 705, did not accurately state the law. Prior to 2021, section 5-2-607 stated that "[a] person may not use deadly physical force in self-defense if the person knows that he or she can avoid the necessity of using deadly physical force . . . [b]y retreating." Ark. Code Ann. § 5-2-607(b)(1)(A) (Supp. 2019). At the time of the offense, Act 250 had amended section 5-2-607 to state that

A person is not required to retreat before using deadly physical force *if* the person:

(1) Is lawfully present at the location where deadly physical force is used;

(2) Has a reasonable belief that the person against whom the deadly physical force is used is imminently threatening to cause death or serious physical injury to the person or another person;

(3) Except as provided under § 5-2-606(b)(2)(B), is not the initial aggressor and has not provoked the person against whom the deadly physical force is used;

(4) Is not committing a felony offense of possession of a firearm by certain persons, § 5-73-103, with the firearm used to employ the deadly physical force, unless the person is in or at the person's dwelling or in the curtilage surrounding the person's dwelling;

(5) Is not engaged in criminal activity that gives rise to the need for the use of deadly physical force at the time the deadly physical force is used; and

(6) Is not engaged in any activity in furtherance of a criminal gang, organization, or enterprise as defined in § 5-74-103.

Ark. Code Ann. § 5-2-607(b) (Supp. 2021) (emphasis added). In recognition of this change, the circuit court gave a modified instruction wherein the entirety of section 5-2-607(b) was

6

inserted into the model jury instruction in place of the duty-to-retreat language that existed prior to the enactment of Act 250.

The first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Magness v. State*, 2012 Ark. 16, at 3, 386 S.W.3d 390, 393. When the language of a statute is plain and unambiguous, there is no need to resort to rules of statutory construction. *Id.* A statute is ambiguous only where it is open to two or more constructions, or where it is of such obscure or doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning. *Id.* When a statute is clear, however, it is given its plain meaning, and this court will not search for legislative intent; that intent must be gathered from the plain meaning of the language used. *Id.* at 3–4, 386 S.W.3d at 393.

As the State points out, Doerhoff's argument with respect to the legislative intent underlying Act 250 is misplaced because it is unnecessary to delve into statutory interpretation in the present case. The circuit court's decision to replace the outdated language in the model jury instruction regarding the duty to retreat with the amended statutory language did not require the court to interpret the meaning of the amended statute, and in any event, the plain language of section 5-2-607(b) is unambiguous. Indeed, the import of section 5-2-607(b) is clear—a person is not required to retreat before using deadly physical force *as long as* the six enumerated conditions are satisfied. Therefore, the analysis need not go further, and we decline Doerhoff's invitation to engage in statutory interpretation by taking into consideration the intent of the legislature. We conclude that the jury was properly instructed on Doerhoff's defense of justification in accordance with the law that was in effect at the time of the offense.

Accordingly, the circuit court did not abuse its discretion in submitting a non-model jury instruction to the jury.

## 2. *Excessive-force jury instruction*

For his second point on appeal, Doerhoff contends that the circuit court erred in refusing to give his proffered jury instruction regarding excessive force. Relying on *Humphrey v. State*, 332 Ark. 398, 966 S.W.2d 213 (1998), and *Sharp v. State*, 90 Ark. App. 81, 204 S.W.3d 68 (2005), Doerhoff asserts that the circuit court should have instructed the jury that the State has the burden of establishing beyond a reasonable doubt that any alleged excessive portion of the force he employed, as opposed to the initial self-defense response, caused Byrd's death. Doerhoff contends that he was prejudiced by the circuit court's refusal to give his proffered non-model instruction because the jury was not presented with a full and fair explanation of the law regarding justification and excessive force. The State responds not only that *Humphrey* and *Sharp* are inapplicable to the present case, but also that the circuit court did not abuse its discretion by rejecting Doerhoff's proffered instruction because a modified version of the model instruction was submitted to the jury, and it accurately reflected the law with respect to excessive force. We agree.

We have stated that a party is entitled to a jury instruction when it is a correct statement of the law and when there is some basis in the evidence to support giving the instruction. *Schnarr v. State*, 2018 Ark. 333, at 3, 561 S.W.3d 308, 311. However, "[i]t is not error for a court to refuse to give a non-model instruction when a model instruction accurately reflects the law. Non-model jury instructions are to be given only when the circuit court finds that the model instructions do not accurately state the law or do not contain a necessary instruction on the subject at hand. Further, we have explained that there

8

is a presumption that the model instruction is a correct statement of the law. As such, any party who wishes to challenge the accuracy of a model instruction, be it the State or a defendant, must rebut the presumption of correctness." *Kinsey*, 2016 Ark. 393, at 10–11, 503 S.W.3d at 778–79 (internal quotation marks and citations omitted).

We are unpersuaded by Doerhoff's reliance on *Humphrey* and *Sharp*. In *Humphrey*, the sole issue on appeal was whether the circuit court erred in refusing to instruct the jury on justification. *Humphrey*, 332 Ark. at 400, 966 S.W.2d at 214. The State argued that there was no evidence of self-defense because the force used was excessive, and Humphrey was therefore not entitled to a justification instruction. *Id*. at 411, 966 S.W.2d at 220. We reversed, explaining that the circuit court's refusal to instruct the jury on justification constituted prejudicial error because "[t]he State has the burden of establishing that any excessive portion of the force used by [Humphrey], as opposed to the alleged initial self-defense response, caused [the victim's] death[,]" and evidence was presented to the jury that both supported and negated the exercise of excessive force. *Id*. at 412, 966 S.W.2d 213, 220. In *Sharp*, the relevant issue on appeal was also whether the circuit court erred in not instructing the jury on justification. *Sharp*, 90 Ark. App. at 91, 204 S.W.3d at 75. The circuit court found that Sharp was not entitled to a justification instruction because "there was not even the slightest evidence to show that she acted in self defense . . . particularly where her use of force was excessive and there was a means to retreat." *Id*. at 90, 204 S.W.3d at 75. In reversing the circuit court's decision, our court of appeals clarified that "whether the [force] was excessive is not relevant to whether the defense was sufficient to go to the jury in appellant's trial, particularly where there was no proof of the sequence of the gunshot wounds or which of them were 'fatal.'" *Id*. at 92–93, 204 S.W.3d at 76. In sum, *Humphrey*

and *Sharp* stand for the proposition that it is reversible error for a circuit court to rely on evidence of excessive force to preclude a jury instruction on the defense of justification.

As discussed above, the circuit court in the present case submitted a modified version of the model jury instruction regarding justification, AMI Crim. 2d 705, but the language concerning excessive force was taken directly from the model instruction. The jury was instructed as follows:

> [I]f you find that Michael Joe Doerhoff recklessly or negligently formed the belief that he was justified in acting in self-defense, or recklessly or negligently employed an excessive degree of physical force, justification is not a defense to Capital Murder, or Murder in the First Degree, or Murder in the Second Degree, or Manslaughter.

Doerhoff expressed that he did not object to this portion of the instruction, but because there is no model instruction regarding the use of excessive force in this context, he proffered the following supplemental, non-model instruction:

> The State may allege or argue that the Defendant used an excessive amount of force against Tommy Wade Byrd. You are instructed that the State must prove beyond a reasonable doubt that any alleged excessive portion of the force used was the cause of the decedent's death. If the evidence leaves you with a reasonable doubt that the alleged excessive portion of the force used was the cause of the decedent's death, then you must find Michael Joe Doerhoff not guilty.

Unlike the issue presented in *Humphrey* and *Sharp*, the issue before us is not whether the circuit court erroneously refused to instruct the jury on justification based on evidence of excessive force. In fact, the State agreed that Doerhoff was entitled to a justification instruction because of the evidence presented at trial, so the jury was presented with such an instruction. Therefore, the holdings of *Humphrey* and *Sharp* are not instructive. Rather, here, the circuit court submitted a justification instruction that adopted the language describing the relationship between the defense of justification and the use of excessive force

10

set forth in the model jury instruction, AMI Crim. 2d 705, and this model language accurately reflected the law regarding the defense. Doerhoff did not object to this portion of the instruction or allege that the model language regarding excessive force was an incorrect statement of the law. Based on the discussion above, Doerhoff has failed to demonstrate that he was entitled to a supplemental, non-model jury instruction regarding excessive force.

Accordingly, the circuit court did not abuse its discretion in refusing to submit Doerhoff's proffered non-model excessive-force instruction to the jury.

### III.  *Rule 4-3(a) Review*

Pursuant to Arkansas Supreme Court Rule 4–3(a), the record has been reviewed for all objections, motions, and requests that were decided adversely to Doerhoff, and no prejudicial error was found.

Affirmed.

*Green & Gillispie*, by: *Chad M. Green*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Jacob H. Jones*, Ass't Att'y Gen., for appellee.