Cite as 2025 Ark. 55

# SUPREME COURT OF ARKANSAS

**No.** CR-24-512

| | | |
|---|---|---|
| KEUNDRE PARKER | | **Opinion Delivered:** May 1, 2025 |
| | APPELLANT | APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT [NO. 35CR-21-327] |
| V. | | |
| | | HONORABLE ALEX GUYNN, JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | <u>AFFIRMED</u>. |

**CODY HILAND, Associate Justice**

Keundre Parker appeals his capital-murder and four aggravated-assault convictions arising out of the Jefferson County Circuit Court. Parker asserts two points on appeal: (1) there was insufficient evidence to support his convictions; and (2) the circuit court erred when it denied his requests for lesser-included-offense instructions. We affirm.

## I. *Factual Background*

On the evening of June 7, 2021, Sharmaine Atkinson took her two minor cousins, Minor Victim 1 and Minor Victim 2, to their aunt's house—the home of Parker's mother. After MV1 dropped off some belongings inside, she returned to Atkinson's vehicle, and Atkinson drove the minor siblings to her stepmother's house. Shortly after arriving, the minor siblings asked to return to their aunt's house, and Atkinson complied. Upon their arrival, Atkinson observed four individuals standing in the driveway to the house, one of whom she recognized as her cousin, Parker.

Atkinson and the minor siblings remained in the vehicle for some time. After an unknown period, Atkinson heard Parker exclaim, "That's the car." Moments later, gunmen opened fire, discharging over one hundred rounds. Atkinson and the minor siblings immediately ducked below the windows for cover. Atkinson testified that the gunfire originated from the area where Parker and his three associates had been standing. She also testified that the streetlights and muzzle flashes provided enough illumination for her to immediately recognize Parker as one of the gunmen.

After the shooting, MV2 exited the vehicle, and Atkinson drove away with MV1. As she fled, Atkinson observed that MV1 was unresponsive. She turned on the dome light and shook MV1 to elicit a reaction. When MV1 remained unresponsive, Atkinson panicked, pulled over, and exited the vehicle. She phoned 911, and officers with the Pine Bluff Police Department arrived shortly thereafter. Upon arrival, the officers discovered that MV1 had suffered a fatal gunshot wound to the back of her head.

At the same time as the shooting, two other individuals fell victim to Parker and his fellow gunmen. Kenneth Jones was in the neighborhood dropping off a family member, Victim 3,[1] when the gunfire erupted. As the shooting began, V3 ran from Jones's vehicle into his home. Jones attempted to flee but lost control and crashed into a nearby house. His vehicle had a shot-out tire, and another bullet hole was found inside the cab on the passenger side. Based on the official statements of Atkinson and other witnesses, the State

---

[1]This court prioritizes the anonymity of minor victims in its opinions, as required by Rule 6-3. Ark. Sup. Ct. R. 6-3; *see also In re Amends. to Rule 6-3 of the Rules of the Sup. Ct. & Ct. of Appeals & Rule 6 of the Rules of Appellate Proc.-Civ.*, 2022 Ark. 182, at 1 (per curiam). Since Victim 3's age could not be verified in the briefs or the record, we refer to him as "Victim 3" rather than "Minor Victim 3" to ensure his anonymity if he is a minor.

filed charges alleging that Parker—and/or his accomplice(s)—committed MV1's capital murder and the aggravated assaults of Atkinson, Jones, MV2, and V3.

After the State rested at trial, Parker's counsel moved for a directed verdict, arguing that Atkinson's identification was unreliable due to the darkness. In response, the State contended that Atkinson's testimony was credible given her familial relationship with Parker and that the gunfire itself provided enough light to illuminate the shooters' faces. The circuit court denied Parker's motion.

During the discussion on jury instructions, both parties agreed to include first- and second-degree murder as lesser-included offenses to capital murder. However, Parker sought additional instructions on manslaughter and negligent homicide as lesser-included offenses of capital murder, as well as first-degree assault as a lesser-included offense of aggravated assault. The State opposed Parker's requested instructions, arguing they were unsupported by the facts. The circuit court agreed and denied the request. After Parker rested at trial, he renewed his motion for a directed verdict on the same grounds, which the circuit court denied. The jury convicted Parker on all charges and sentenced him to life in prison plus fourteen years. Parker appeals.

II. *Law and Analysis*

A. Sufficiency of the Evidence

Parker's first argument on appeal is that there was insufficient evidence presented at trial to support his capital-murder and aggravated-assault convictions, and that the circuit court erred by denying his motion for a directed verdict. Specifically, Parker argues that Atkinson's testimony identifying him as one of the gunmen responsible for MV1's death

and the four aggravated assaults of Atkinson, Jones, MV2, and V3 "does not withstand scrutiny." We disagree. Sufficient evidence at trial supports affirming Parker's capital-murder and aggravated-assault convictions.

On appeal, we treat a motion for directed verdict as a challenge to the sufficiency of the evidence. *De la Garza v. State*, 2025 Ark. 10, at 4, 704 S.W.3d 627, 632. When reviewing the appellant's challenge, we view the evidence in a light most favorable to the State and consider only the evidence that supports the verdict. *Id.*, 704 S.W.3d at 632. Accordingly, we will affirm the verdict if substantial evidence supports it. *Id.*, 704 S.W.3d at 632. Substantial evidence is evidence of a sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *Id.* at 4–5, 704 S.W.3d at 632.

At trial, the State must prove that the person standing as the defendant is the one whom the indictment or information accuses and to whom the evidence relates. *Finley v. State*, 2019 Ark. 336, at 4, 587 S.W.3d 223, 227. Such identification can be inferred from all the facts and circumstances contained in the evidence. *Id.* at 4–5, 587 S.W.3d at 227. When a witness makes a positive identification of a suspect, any challenge to the reliability of the identification becomes a matter of credibility for the fact-finder to determine. *Mason v. State*, 2013 Ark. 492, at 4, 430 S.W.3d 759, 763.

The testimony of one eyewitness alone is sufficient to sustain a conviction when the testimony is not inherently improbable, physically impossible, or so clearly unbelievable that reasonable minds could not differ thereon. *Ellis v. State*, 2012 Ark. 65, at 9, 386 S.W.3d 485, 490. In resolving conflicting testimony and inconsistent evidence, it is the jury's role

to assess witness credibility and resolve discrepancies in the evidence. *De la Garza*, 2025 Ark. 10, at 5, 704 S.W.3d at 632. Lastly, the jury is entitled to accept the State's version of the facts over the defendant's, to resolve any inconsistent testimony, and to accept or reject any alternative theories. *Id.*, 704 S.W.3d at 632.

Atkinson testified that she saw Parker at the house where MV1 was murdered on the night of the shooting. She further testified that Parker—her cousin—exclaimed, "That's the car," just before the shooting began. Atkinson also identified Parker as one of the gunmen. During trial, Atkinson confirmed her identification of Parker. Though the shooting occurred at night, Atkinson explained on direct that she was able to see the shooters' faces because of the streetlights in the area and the muzzle flashes from the firearms. On cross, she reiterated that the light from the muzzle flashes was sufficient for her to clearly see the gunmen's faces.

Parker contends, contrary to Atkinson's testimony and the established facts in the record, that the illumination from the firearms was insufficient for her to identify him as one of the gunmen. However, it is evident that additional lighting was provided by the streetlights in the area. Moreover, the murder took place at Parker's residence, and Parker's own witness, MV2, testified that Parker was at the house that evening. The State also pointed out that four firearms rapidly firing over one hundred shots could emit enough light to illuminate the faces of the gunmen. This evidence, along with the witnesses' testimony, was presented to the jury and supports its verdict.

Parker's assertion that it is impossible to identify Parker as one of the gunmen from the muzzle flashes of the firearms does not make it so. Juries are entitled to resolve any

5

inconsistencies in the presented testimony and weigh it. *Id.* at 7, 704 S.W.3d at 633. It is clear that in the present situation the jury did so in a manner consistent with its verdict.

Considering Atkinson's testimony, the testimony of other witnesses, and the entirety of the evidence presented at trial, the jury concluded that Parker's guilt was proven beyond a reasonable doubt, resolving any potential inconsistencies in Atkinson's testimony, and found Parker guilty of capital murder and four counts of aggravated assault. Therefore, substantial evidence existed at trial for the circuit court to properly deny Parker's motion for directed verdict. Thus, the circuit court did not err in denying his motion.

### B. Lesser-Included-Offense Instructions

Parker's second argument on appeal is that the circuit court abused its discretion by not instructing the jury on manslaughter and negligent homicide as lesser-included offenses of capital murder, and first-degree assault as the lesser-included offense of aggravated assault. Specifically, Parker argues that the circuit court should have given the instructions because a rational basis existed for each one to be provided to the jury. We disagree.

If the slightest evidence supports giving an instruction on a lesser-included offense, a circuit court commits reversible error by refusing to give it. *Goehler v. State*, 2023 Ark. 186, at 10, 678 S.W.3d 745, 752. However, a circuit court need not proffer instructions on a lesser-included offense *unless there exists a rational basis* for acquitting the defendant of the charged crime and instead convicting him of the lesser. *Id.*, 678 S.W.3d at 752. We review a circuit court's rulings concerning jury instructions for abuse of discretion. *Id.*, 678 S.W.3d at 752. This is a high standard that does not simply require error in the circuit court's

6

decision, but that the circuit court acted improvidently, thoughtlessly, or without due consideration. *Doerhoff v. State*, 2023 Ark. 149, at 4–5, 675 S.W.3d 877, 880.[2]

1. *Manslaughter and negligent homicide*

Parker argues that the circuit court should have instructed the jury on the lesser-included offenses of manslaughter and negligent homicide. He argues that even if he was a gunman the night of MV1's murder, the evidence showed that he was aware of a substantial and unjustifiable risk that he might cause another's death, but his awareness was less than a substantial certainty, which begged a manslaughter instruction. Further, he argues that—again, if he was a gunman—the evidence showed *he should have been aware* of a substantial and unjustifiable risk that he might cause another's death, *but he was unaware* of such a risk. We disagree.

Notably, the jury was instructed on first- and second-degree murder as the lesser-included offenses of capital murder. However, the jury convicted Parker of capital murder. Under this court's "skip rule," "when a lesser-included offense has been given, and the jury convicts [the defendant] of the greater offense, [any] error resulting from the failure to give an instruction *on another still lesser-included offense* is cured." *Flowers v. State*, 362 Ark. 193, 214, 208 S.W.3d 113, 129 (2005) (emphasis added). Because the jury rejected the two lesser-included offenses that it was instructed on, any error stemming from the circuit court's failure to instruct the jury on manslaughter and negligent homicide is harmless. *Id.*, 208

---

[2]The concurrence asserts that our standard for lesser-included-offense instructions imposes a higher bar than we currently recognize. That said, while we do not deny our ability to address potentially confusing issues in our case law when properly before us, that is not the case here.

S.W.3d at 129. Accordingly, the absence of the instructions on manslaughter and negligent homicide does not provide a basis for reversal.

### 2. *Assault in the first degree*

Parker argues that the circuit court should have instructed the jury on the lesser-included offense of assault in the first degree. He argues that, again, even if he was a gunman the night of the shooting, the evidence showed that he was aware of a substantial and unjustifiable risk that he might cause serious physical injury to another person or persons, but his awareness was less than a substantial certainty, which begged an assault in the first degree instruction. We disagree.

A person commits assault in the first degree if he "*[r]ecklessly* engages in conduct that creates a substantial risk of death or serious physical injury to another person[.]" Ark. Code Ann. § 5-13-205(a)(1) (Repl. 2013). "A person acts *recklessly* with respect to attendant circumstances or a result of his or her conduct when the person *consciously disregards* a substantial and unjustifiable risk that the attendant circumstances exist or the result will occur." Ark. Code Ann. § 5-2-202(3)(A) (Repl. 2013) (emphasis added). "The risk must be of a nature and degree that disregard of the risk constitutes a gross deviation from the standard of care that a reasonable person would observe in the actor's situation[.]" Ark. Code Ann. § 5-2-202(3)(B) (Repl. 2013).

Atkinson testified that Parker and his accomplices were standing in or near the driveway of his home upon their arrival. While sitting in the driveway, Atkinson heard Parker exclaim, "That's the car," and moments later over one hundred shots were fired by Parker and his fellow gunmen. Atkinson testified that Parker was shooting a firearm. MV1

8

died as a result of the shooting and four other individuals were assaulted. In light of these facts and testimony, there is no evidence to support a finding that Parker and his accomplices merely shot Atkinson's vehicle in a reckless manner. Rather, the evidence showed that Parker's actions were intentional and created a substantial danger of death or serious injury to four individuals—Atkinson, Jones, MV2, and V3. Therefore, the circuit court did not abuse its discretion when it rejected Parker's instruction for assault in the first degree as there was no rational basis for such instruction.

## III. *Conclusion*

In light of our well-set precedent governing challenges to the sufficiency of the evidence presented at trial, a circuit court's discretion in denying lesser-included offense instructions, and the arguments presented here on appeal, Parker is unpersuasive. We affirm.

## IV. *Rule 4-3(a) Review*

Because Parker received a life sentence, the record has been examined for all objections, motions, and requests made by either party that were decided adversely to him in compliance with Arkansas Supreme Court Rule 4-3(a). No prejudicial error was found.

Affirmed.

WOMACK and BRONNI, JJ., concur.

**NICHOLAS J. BRONNI, Justice, concurring.**

I agree with the court's disposition, but I write separately to note our standard for giving and reviewing lesser-included instructions should be revisited. We often repeat the rule that "[i]f even the slightest evidence supports giving an instruction, a trial court commits reversible error by refusing to give it." *Goehler v. State*, 2023 Ark. 186, at 10, 678 S.W.3d

745, 752. But trial courts routinely decline to give lesser-included instructions, and we regularly affirm those denials. *See Cypert v. State*, 2025 Ark. 11, at 10, 705 S.W.3d 496, 501(listing cases). So the bar clearly isn't as low as that language would suggest. Nor for that matter can our language that a trial court commits "reversible error" when "even the slightest evidence supports giving an instruction" be squared with the fact that we reverse only when a trial court has abused its discretion. *Goehler*, 2023 Ark. 186, at 10, 678 S.W.3d at 752. Rather than continue to repeat one standard and apply another, I'd take the opportunity presented by this case to clarify the relevant rule. Indeed, as a state court of last resort, we owe litigants and lower courts clarity—not repetition. *See East Macedonia Baptist Church, Inc. v. Pettit*, 2025 Ark. 13, at 1 (Bronni, J., dissenting) (dissenting opinion from denial of petition for review).

The court's often-repeated standard for lesser-included instructions isn't the result of principled statutory interpretation or considered analysis. It's the result of reading language out of context and decades of layering various standards on top of one another without ever attempting to reconcile those various layers. Start with the "slightest evidence" language. That language doesn't come from any statute. Far from it, for at least a half century, the statutes governing lesser-included instructions have said courts are not "obligated to charge the jury with respect to an included offense unless there is a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense." Ark. Stat. Ann. § 41-105 (Repl. 1977); Ark. Code Ann. § 5-1-110(c) (Repl. 2024) (containing the same standard); *see also* ALI, Model Penal Code § 1.07(5), at 12–13 (1962) (same).

That "slightest evidence" language instead comes from *Robinson v. State*, 269 Ark. 90, 93, 598 S.W.2d 421, 423 (1980), which claimed it came from three earlier cases. But the three cases *Robinson* cited neither used that phrase nor suggested it was the appropriate standard. To the contrary, like our current statute, all three cases hold that a lesser- included instruction is only warranted where there's evidence that would justify acquitting the defendant of the greater offense and convicting him of the lesser. *See King v. State*, 117 Ark. 82, 88–89, 173 S.W. 852, 854 (1915) (requiring "any testimony from which the jury might *legitimately infer* that the defendant was guilty of a lower grade of homicide than murder in the first degree" (emphasis added)); *Walker v. State*, 239 Ark. 172, 180, 388 S.W.2d 13, 17 (1965) (using the same language as *King*); *Westbrook v. State*, 265 Ark. 736, 747, 580 S.W.2d 702, 707–08 (1979) (requiring "the evidence presented [to] show[] the accused might be convicted of a lesser offense than that charged or of an offense which is necessarily included in the charged"). And aside from simply asserting that "[n]o right has been more zealously protected by this court than the right of an accused to have the jury instructed on lesser[-included] offenses," *Robinson* made no effort to justify its "slightest evidence" framing. *Robinson*, 269 Ark. at 93, 598 S.W.2d at 423. So it's unclear where the "slightest evidence" standard comes from, what it means, or how it's consistent with the statute. *Cf. Cypert*, 2025 Ark. 11, at 10, 705 S.W.3d at 501 (explaining that while the phrase slightest evidence "might sound like a low bar, . . . our cases have shown that it is not").

Yet that's just the beginning of the problem because a mere year after *Robinson*, *Collins v. State*, 271 Ark. 825, 611 S.W.2d 182 (1981), changed the standard again. This

11

time, the court held that it was per se reversible error not to give such an instruction, though our previous cases had never gone that far. *See id.* at 831, 611 S.W.2d at 187 ("This Court has recently reiterated that it is reversible error to refuse to give a requested instruction where there is the slightest evidence to warrant such an instruction[.]"). *Collins* did not justify that change. It simply overread previous cases as adopting a categorical rule when they had merely found reversible error on the specific facts before them. *See id.* (citing *Robinson*, 269 Ark. 90, 598 S.W.2d 421; *Brewer v. State*, 271 Ark. 254, 608 S.W.2d 363 (1980)).

Still, even after we changed the standard again, our cases didn't consistently use that language. *See Henson v. State*, 296 Ark. 472, 473, 757 S.W.2d 560, 560 (1988) (reverting to "error" just a few years after *Collins*); *Kail v. State*, 341 Ark. 89, 93, 14 S.W.3d 878, 880 (2000) (using the rule statement without reversible error despite cases before articulating the rule that way); *Sweet v. State*, 2011 Ark. 20, at 14, 370 S.W.3d 510, 521 (same). Instead, we sometimes followed *Collins* and sometimes followed our earlier approach—never stopping to consider the relevant statutes or fix the problem.

Our later cases apparently tried to reconcile those competing standards by simply layering yet another standard of review—abuse of discretion—on top of the reversible error and slightest evidence language. *See Boyle v. State*, 363 Ark. 356, 361–62, 214 S.W.3d 250, 253 (2005) (using "reversible error" language while conducting an abuse of discretion review). But far from reconciling those various standards—or more importantly returning to the statute—that simply created more confusion, producing a standard that says multiple,

12

irreconcilable things. And the majority's repetition of all those various standards simply continues the confusion.

The same is true of the majority's use of the phrase "rational basis" to explain the level of evidence needed to justify a lesser-included instruction. In the abstract, the phrase "rational basis" is usually used to describe a minimal basis or the lowest level of scrutiny. *See Landers v. Stone*, 2016 Ark. 272, at 11, 496 S.W.3d 370, 378. And the reader could be excused for thinking that's what the majority (and previous cases) mean to say because it never explains that language comes from a statute which uses that phrase in a very different way. *See* Ark. Code Ann. § 5-1-110. Indeed, far from using the phrase in the sense that other cases do, the lesser-included instruction statute uses that phrase in its ordinary sense. That is, to mean a sound, reasonable, legitimate, or actual basis—not just some theory contrived out of thin air and unsupported by the record in front of the trial court. Rational, Merriam Webster Thesaurus, https://www.merriam-webster.com/thesaurus/rational (last visited Apr. 22, 2025) (using a variation of words as synonyms for rational) (archived at https://perma.cc/S5WP-4DL6); *see also* ALI, Model Penal Code & Commentaries § 1.07(5) comm. 6, at 135 (1985) ("[I]t is not proper for a trial judge to submit a lesser included offense unless *some reasonable interpretation of the evidence* would support an acquittal of the greater inclusive offense and a conviction of the lesser included offense" (emphasis added)). Thus, lower courts only need to give a lesser-included instruction where the record provides a sound or actual "basis for acquitting the defendant of the charged crime and instead convicting him of the lesser." *Cypert*, 2025 Ark. 11, at 10, 705 S.W.3d at 501; *see also Doerhoff v. State*, 2023 Ark. 149, at 8, 675 S.W.3d 877, 882 (explaining that a proponent is

entitled to a jury instruction when "there is *some basis in the evidence* to support giving the instruction" (emphasis added)). So rather than just quote that phrase from our case law, I'd cite the governing statute and explain what it means.

In sum, our case law creates unnecessary confusion. This case presents an opportunity to end that confusion. But rather than clarify the law, the majority opts to simply repeat a standard that doesn't make sense, is self-contradictory, and cannot be squared with the relevant statute. I'd take a different approach and use this case as an opportunity to clarify the law and hold that: (1) a lower court isn't required to give a lesser-included instruction unless there's a sound evidentiary basis for acquitting the defendant of the charged crime and instead convicting him of the lesser; and (2) on appeal, reversal is only warranted (not required) where a judge has abused his or her discretion—that is acted thoughtlessly, improvidently, or without due consideration—in making that determination. That's the standard our cases, including this one, actually apply, and we shouldn't hide the ball.

WOMACK, J., joins.

*Morris Law Firm*, by: *Jimmy C. Morris Jr.*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Jacob Jones*, Ass't Att'y Gen., for appellee.

14